UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                                    Criminal No. 23-cr-20325

v.                                      Hon. Linda V. Parker

Josue Pereira,

      Defendant.
                                   /

## **UNITED STATES' SENTENCING MEMORANDUM**

Slut. Whore. Slave. Only good for sex. That is what Pereira called and told MV-1 while he was exploiting her over video calls. (MV-1 Interview, Bates 47). He had her wear a onesie and pretend to be a toddler. He had her choke herself, slap herself in the face, and slap herself in the vulva. He engaged in this behavior for months. He also had physical contact with her and would have traveled to Michigan to engage in sexual acts with her had she not broken off contact with him, as he had gone as far as to purchase a plane ticket.

Pereira took advantage of the trust provided to him by MV-1's family as a close family friend to gain access to her, groom her, and exploit her. Pereira is a danger who has caused lasting and serious

1

damage to MV-1 and her family. He should receive a sentence at the top of the guidelines.

## I. Facts and Procedural History

In November 2021, Pereira, who lived in Florida, flew to Michigan in order to spend Thanksgiving with the family of one of his friends. (PSR ¶ 12). There, Pereira met his friend's niece, who was only 14 years old. *Id.* Pereira was 36-years old at the time. Pereira and MV-1 remained in contact over social media following that visit. (PSR ¶ 12).

In February 2022, MV-1 and her father visited Florida and Pereira was again with MV-1's family. During that visit, Pereira took advantage of his contact with MV-1 to kiss her. (PSR ¶ 15). After that kiss, Pereira and MV-1 considered themselves "dating."

Pereira and MV-1 saw each other on one to two more trips after that. (PSR ¶ 15). During those later interactions, Pereira became more brazen, kissing MV-1 again and encouraging her to show him her breasts. *Id.* He repeatedly attempted to touch her vagina and on one occasion successfully did so.

Pereira also had contact with MV-1 over the phone and the internet. After February 2022 and continuing until January 2023,

2

Pereira sexually exploited MV-1 by asking her to create sexually explicit images and send them to him. (PSR¶ 14). At one point, he told MV-1 that he printed an image of her that and masturbated to completion on the image. (PSR ¶ 14). During the video calls, he had her choke herself, slap herself in the face, slap herself in the vulva, and insert objects into her vagina. (MV-1 Int, Bates 47). During these calls, he would call her demeaning names and tell her that she was only good for sex. (Bates 47).

Pereira also wanted MV-1 to have sex with a classmate and so he could watch. She recounted this request and his angry reaction during her forensic interview:

> MV-1 advised she and Pereira got into an argument over him wanting to watch MV-1 and another high school student engage in sexual intercourse over video call. MV-1 advised Pereira stated she should find someone in her high school to have sexual intercourse with, and allow him to watch. Pereira stated to MV-1 that this was a very important part of their relationship, and became angry when MV-1 refused. Pereira stated her refusal to do so was a big deal in their relationship.

(Bates 48).

Pereira also convinced MV-1 that he would marry her. She recounted this in her forensic interview as summarized below:

3

> MV-1 stated her and pereira also devised plans to get married. She stated she researched how to get married online while at the library. MV-1 stated she found an African country (unidentified) that facilitated online marriages, but the links would not work. The other plan devised between MV-1 and Pereira was to get married in Bolivia, where she stated the legal age to get married was 15. MV-1 stated she was going to find an educational trip to Bolivia where Pereira would meet her and they would sneak away and get married. MV-1 advised their plan after getting married was to run away together to Costa Rica.

(Bates 47).

In the beginning of 2023, Pereira actually made plans to come to Detroit to engage in sex acts with MV-1. He appears to have gone as far as buying a ticket as this evidence from his phone demonstrates:



(Bates 2492).

However, in January 2023, MV-1 decided that she no longer wanted to interact with Pereira and cut-off contact with him. She told her father in February 2023, who contacted police. By that time, MV-1 had destroyed the vast majority of their communications, which were over multiple platforms. However, a Google doc that they both contributed to was not destroyed, which had over 1000 pages of

4

conversations and non-pornographic images that they exchanged with each other. Law enforcement obtained this document.

A federal complaint was filed against Pereira on May 9, 2023, and he made his initial appearance in Florida on May 11, 2023, after being arrested there. (R. 4, Mot. To Unseal, Pg.ID 11). A grand jury indicted him on June 7, 2023, for sexual exploitation of children and coercion and enticement. (R. 1, Pg.ID 1-4). Pereira pleaded guilty to coercion and enticement on March 18, 2024, pursuant to a Rule 11 plea agreement. (R. 39, Plea Agreement).

## II. Section 3553(a) factors warrant a top of the guidelines sentence.

Congress provided in 18 U.S.C. § 3553(a) the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing

5

disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

An analysis of these factors dictates a sentence of 365 months' imprisonment.

### A. The Sentencing Guidelines Range

The United States Probation Department calculated Pereira's criminal history category to be I and total offense level to be 40 resulting in a sentencing guideline range of 292 to 365 months imprisonment. (PSR ¶ 76). The United States concurs with the calculation completed by the Probation Department.

### B. Nature and circumstances of the offense and history and characteristics of Pereira, 18 U.S.C. § 3553(a)(1)

Pereira's offense mandates a sentence that reflects the traumatic nature of his crimes. Pereira sexually exploited MV-1 over a long period of time. He first extensively groomed her, engaging in lengthy conversations with her over social media after first meeting her. Even this behavior---a 36-year-old man in constant contact with a 14-year-old child is wildly inappropriate, but it represented only a small part of what was to come. He then exploited the crush that she had on him to cause her to engage in sexually explicit conduct with him. He convinced

her they were in love and were going to be married. This is an enormously serious offense involving sexual exploitation and emotional damage to a minor. It involved online exploitation and physical contact. It involved a full attempt to engage in sex acts with a minor, thwarted only by her "breaking up" with him before he had a chance to travel to Michigan. And Pereira committed the offense conduct for nearly a year. Pereira committed an extraordinarily serious offense---as evidenced by its ten-year mandatory minimum and life sentence maximum—and did so in a persistent, varied, and disgusting manner. This factor favors a sentence at the top of the guideline for that reason alone.

    Pereira will likely point to his own history to try to explain his behavior. But it is his responsibility to take the issues from his past and ensure that he does not create the same damage unto others that was caused upon him. Moreover, Pereira's employment history is inconsistent, though he held the same employment for two years prior to his arrest in this case. (PSR¶¶ 67-71). Finally, Pereira has a prior arrest for soliciting a prostitute in 2013, where he received a deferred prosecution agreement. (PSR ¶ 40). That is another instance of Pereira being unable to control his sexual behavior. Pereira also recently

7

married while in custody on this case. (PSR ¶ 50). This is unusual enough, but this marriage comes only a little over three months after the date he was originally supposed to fly to see MV-1 in Detroit. His characteristics are not especially mitigating in this circumstance.

Pereira's offense will have a lasting impact on MV-1. MV-1 will have to navigate the world and adult life carrying the baggage that Pereira put upon her, and it will undoubtedly impact MV-1's interpersonal relationships for the rest of her life. MV-1 will go on to become far more than what Pereira has done too her, but she will bear the emotional scars of his actions forever.

### C. Seriousness of the Offense, Adequate Deterrence, and Protecting the Public, 18 U.S.C. § 3553(a)(2)(B) and (C)

The enticement and sexual exploitation of a child is one of the most serious offenses recognized under the law. Pereira committed this most serious of offenses numerous times with MV-1. He knew her age because he knew her family. He did not care that she was 14 years old. He did not care that she still had braces. He did not care that she was barely even a high school student. He did not care that she looked young even for 14. His sentence for this offense should reflect the

8

seriousness of his crimes and the only effective way to do that is for this Court to impose a significant custodial sentence.

Relatedly, the above considerations impact another § 3553(a) factor – the need to deter such conduct in the future. Sentencing in the federal system has long contemplated the ability to provide both specific and general deterrence. *United States v. Phinazee*, 515 F.3d 511 (6th Cir. 2008); *United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006). Deterrence is particularly important when dealing with online enticement offenses because these crimes occur in private, making them easy to commit and difficult to detect, resulting in victims being repeatedly exploited. A significant sentence is necessary so that Pereira and others will understand the consequences of child exploitation offenses and deter him and others from engaging in this conduct in the future.

A sentence at the top of the guidelines would reflect the seriousness of this offense, provide just punishment, and protect the public from Pereira's future crimes.

> D. **Kinds of sentences available and the need to avoid unwarranted sentencing disparities.**

A significant sentence is necessary to avoid unwarranted sentencing disparities. While a sentence at the top of the guidelines would be above the average sentence for those with this score and criminal history category, Pereira has made such a sentence appropriate through the duration, severity, and varied ways in which he committed the offense. The Court cannot and should not simply look at scores and categories to come up with a sentence that is appropriate. Instead, the Court should look at the manner in which Pereira committed this offense. His peers are those that committed this offense in the most aggravated of ways, not the average defendant.

## III. Conclusion

Josue Pereira preyed on a child. He exploited her for months, tricking her into believing he loved her and they would get married. He caused her to engage in disturbing sexual acts. He tried to make her have sex with a classmate so he could watch them. And he would have had sex with her himself if she had cut off contact before he travelled to Michigan. He is a danger to the public and has caused lasting and serious damage to the victim and her family. The factors set forth in §

10

3553(a) support a sentence at the top of the guidelines, a sentence of 365 months.

>Respectfully Submitted,
>
>DAWN N. ISON
>United States Attorney
>
>*s/Christopher W. Rawsthorne*
>CHRISTOPHER RAWSTHORNE
>Assistant United States Attorney
>600 Church Street
>Flint, MI 48502
>(810) 766-5032
>christopher.rawsthorne@usdoj.gov

Dated: July 16, 2024

## Certificate of Service

I certify that on July 16, 2024, I electronically filed the foregoing document with the Clerk of the Court of the Eastern District of Michigan using the CM/ECF system, which will send notification to all counsel of record via email.

*s/Christopher W. Rawsthorne*
CHRISTOPHER W. RAWSTHORNE
Assistant United States Attorney
